[Civ. No. 11016. · Second Appellate District, Division One.—August 31, 1936.]

## CLEO ROGERS et al., Appellants, v. RICHARD VREELAND, Respondent.

C. Douglas Smith for Appellants.

Griffith & Thornburgh for Respondent.

WHITE, J., *pro tem.*—This is an appeal by plaintiffs from a judgment in favor of defendant entered after a general demurrer interposed by defendant was sustained by the court below without leave to amend. The gravamen of the complaint, containing three causes of action, is the charge of negligence on the part of defendant in driving his automobile so carelessly that the same upset, as the result of which plaintiffs, who were riding therein, were injured. After alleging such negligence on the part

of defendant, the complaint seeks to justify the existence of a cause of action for negligence by alleging that plaintiffs gave to the defendant compensation for their ride, by reason of which plaintiffs herein were not guests, under section 141¾ of the California Vehicle Act. This latter allegation is contained in the following language:

"That at the time of the accident mentioned in this complaint the plaintiffs and the defendant, Richard Vreeland, were on a trip to see the wildflowers in the San Joaquin Valley, State of California, and that prior to commencing said trip an oral agreement was entered into between the plaintiffs and the defendant that the said plaintiffs would pay their share of the expenses of running the said automobile and their share of any other expenses on said trip, and said agreement was in full force and effect at the time of the happening of said accident. Pursuant to said oral contract plaintiffs have paid to the defendant their share of said expenses of said trip."

The only question, therefore, presented to us, is whether or not, under the foregoing allegation, the plaintiffs rode in the capacity of passengers, or were guests as the latter classification is defined by section 141¾ of the California Vehicle Act (now sec. 403, Vehicle Code), which section was in effect at the time of the accident here in question. The pertinent part of this section reads as follows:

"Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of California, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. . . .

"Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication or wilful misconduct of such owner, driver or person responsible for the operation of such vehicle; provided, that in any action for death or for injury or for damage to person or property by or on behalf of a guest or the estate, heirs, or legal representatives of such guest, the burden shall be upon plaintiff to establish that such intoxication

or wilful misconduct was the proximate cause of such death or injury or damage. . . .

"For the purpose of this section the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor."

It is at once apparent that if the agreement to pay and the subsequent payment by plaintiffs of "their share of the expenses of running the said automobile and their share of any other expenses on said trip" amounted to "giving compensation therefor", then plaintiffs are without the pale of and not bound by the restrictions and limitations of section 141¾ of the California Vehicle Act, so far as their rights to recover damages are concerned. While it is true, as urged by appellants, that the legislature, in the final paragraph of the act, attempts to define the word "guest" as therein used, yet oftentimes it becomes necessary, in ascertaining the intent of the legislature, not only to examine the language used, but to look further if doubt or uncertainty still exists. (*Crawford* v. *Foster*, 110 Cal. App. 81, 83 [293 Pac. 841].) In deciding whether plaintiffs come within the definition, we must determine what is meant by "accepting a ride without giving compensation therefor". Appellants argue that the mere payment of money to the driver of an automobile by the persons riding therein is the clearest, most recognizable and most satisfactory of all material compensations.

Webster's New International Dictionary defines compensation as follows: "That which constitutes, or is regarded as, an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends, remuneration, recompense." It should here be noted that the definition in the statute does not say "without paying therefor", but rather says, "without giving compensation therefor". This would seem to indicate an intention not to limit the same to a person definitely and specifically paying for his transportation in cash or its equivalent, but to include in its scope a person who gives such recompense for the ride as may be regarded as a compensation therefor; that is, a return which may make it worth the other's while to furnish the ride. The question naturally presents itself, therefore: what return did the defendant in the instant case receive that

would make it worth his while, materially speaking, to furnish the ride? In *Searcy* v. *Grow*, 15 Cal. 118, the word "compensation" is defined as "that return which is given for something else; in other words, a consideration". A consideration may be any benefit conferred or any prejudice suffered. (Civ. Code, sec. 1605.)

The automobile trip which resulted in the accident here in question was, in our opinion, undertaken by the respondent driver more as an act of hospitality. It certainly was not undertaken as a part of respondent's business, with an eye to his own profit or material benefit. The industry of learned counsel on both sides of this case has failed to locate a case in California presenting facts analogous to the ones here presented, nor have our research efforts in that regard proved fruitful. Running through the decisions in this state involving the "guest" statute is the element of material benefit to the defendant driver in the form of possible profits, where the elements of friendship and hospitality were not involved, and where the ride was taken as an integral part of a business transaction. In those cases, by reason of the fact that the one riding was conferring some benefit upon the driver of the automobile, it has been held that the riders were not the "guests" of the driver of the automobile. The case before us is therefore one of first impression. It has been held that the terms of a statute should be construed with their intent and purpose in view. (*Evans* v. *Selma Union High School Dist.*, 193 Cal. 54 [222 Pac. 801, 31 A. L. R. 1121].) The purpose and object that the legislature had in mind sometimes throws light upon the meaning of the language used, and as was said in *Crawford* v. *Foster, supra,* "The situation that this section was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation." While neither this feeling nor its reasons therefor apply to a situation arising out of an ordinary business

transaction, yet in our opinion, the feeling, reasons and motives actuating the legislature in the adoption of this section may well apply to facts such as those presented in the instant case. Doubtless the legislature intended to change the rule heretofore adopted in this state, that an invited guest could recover for simple negligence, and to provide that such a person could not recover in the absence of a showing of intoxication or wilful misconduct; and we are of the opinion that the section is applicable to a case such as the one now before us, where the riders, on a trip purely social, and without any commercial or business element, agreed to pay their share of the running expenses of the automobile and their share of any other expense on the trip. We do not consider such an arrangement between the riders and the driver as the giving by the former to the latter of such compensation as removes the riders from the status of ''guests'' within the meaning of the act. We conclude that this is one of the types of cases to which the ''guest'' statute was intended to apply. There is not here such mutual benefit involved between riders and driver as to change the status of the parties from the relationship of guest and host. In this view we find support from the decisions in other states construing similar statutes in the face of facts analogous to those in the case now under review by us. In *Chaplowe* v. *Powsner,* 119 Conn. 188 [175 Atl. 470, 95 A. L. R. 1177], plaintiff had tickets to a preview at a movie; she wanted defendant to drive her in defendant's car. An accident occurred and plaintiff sued. In denying recovery, on the ground plaintiff was a guest, the court uses the following language:

''The finding in the present case depicts, at most, a situation of reciprocal hospitality between neighbors and intimate friends—that of the car extended by the defendant and that of the theater pass by the plaintiff—and is barren of such definite relations, contractual or otherwise, and of such *tangible mutual benefit as the statute contemplates in order to remove the plaintiff from the status of a guest and the consequences attaching thereto.''* (Italics ours.)

The case of *Olefsky* v. *Ludwig,* 242 App. Div. 637 [272 N. Y. Supp. 158], involved the interpretation by the New York courts of the Connecticut guest statute, and the court

disposed of the question of sharing expenses of gasoline, oil, and garage bills as follows: "On the trial the court left to the jury the question whether the contribution by the plaintiff to the expenses of the operation of the car, such as gas, oil, and garage charges, constituted payment for transportation within the meaning of the Connecticut statute. . . . *We are of opinion that, as a matter of law, such contribution does not constitute payment within the meaning of that statute.*" (Italics ours.)

In the case of *Morgan* v. *Tourangeau,* 259 Mich. 598 [244 N. W. 173, a situation was presented quite similar to the one before us. There the defendant invited plaintiff to make a trip, and plaintiff had the gasoline tank filled at the start of the trip and bought more gasoline en route, the defendant apparently purchasing no gasoline. The court held that plaintiff was at all times a gratuitous guest.

In *Clendenning* v. *Simerman,* 220 Iowa, 739 [263 N. W. 248], plaintiff, defendant, and two friends had dinner together, following which they were going home in defendant's car. *Plaintiff had the tank filled with gasoline and paid for it.* In holding plaintiff was a "guest", the Iowa court said: " . . . when automobiles are so common, it is a well-known fact that the outlay for gasoline is only one of the many expenses incident to ownership and operation of an automobile. In receiving a little gas this appellee did not receive compensation for the cost of driving his Ford coupe, loaded with four people from Keota to Des Moines and back again." It might well be said in the instant case that when the three appellants paid their share of the running expenses of the automobile, including, undoubtedly, gasoline and oil, from Santa Barbara County to the San Joaquin Valley on a pleasure trip to see the wildflowers, that respondent herein did not receive "compensation" for the cost of driving his automobile, loaded with four people, on the trip. Standing alone, this sharing of the expenses of this trip, at most, was simply an expression of courtesy and appreciation that a guest often evinces and manifests. To hold otherwise would compel every host to dilute his hospitality and season it with the flavor of a bargain. A guest may not accept a gratuity under mental reservation, and by a trifling reciprocity convert it into a binding agreement having legal conse-

quences. (*Eubanks* v. *Kielsmeier*, 171 Wash. 484 [18 Pac. (2d) 48].)

In all the cases having to do with "guest" statutes, it appears that the various courts have had distinctly in mind the question of whether the circumstances presented bring the case within the intent and purpose to be accomplished and the evils to be remedied by the enactment of such statute, as well as whether the plaintiff was within the language of the statutes being considered. (*Rocha* v. *Hulen*, 6 Cal. App. (2d) 245 [44 Pac. (2d) 478].)

For the foregoing reasons the judgment should be, and it is, affirmed.

York, Acting P. J., and Doran, J., concurred.