[Civ. No. 15279. First Dist., Div. One. Mar. 27, 1953.]

SADIE BRANDIS et al., Appellants, v. ISRAEL
GOLDANSKI et al., Respondents.

Ralph Wertheimer for Appellants.

Charles V. Barfield and Franklin A. Plank for Respondents.

PETERS, P. J.— Where a participant in a church-sponsored picnic volunteers the use of his truck to carry supplies to the picnic, and one of the members of the church, with others, helps to load the truck, and that member agrees to ride with the owner of the truck to show him the route to the picnic grounds, and en route the owner drives the truck negligently so that the rider is killed, was the rider a guest or a passenger within the meaning of the California guest law? That is the sole question presented on this appeal. In this action for the wrongful death of the rider brought by his widow and two adult children, the trial court decided that the rider was a guest and not a passenger, and, since wilful misconduct was neither pleaded nor proved, granted a nonsuit in favor of the defendants. On this appeal the plaintiffs contend that, under the evidence, it was a question of fact as to whether the deceased was a passenger or a guest, and that the nonsuit should not have been granted.

The facts disclosed by the record are as follows: Frank Brandis was killed in a collision on Bayshore Highway while riding in a truck owned by Israel Goldanski and Max Fourkas, partners in Drabkin's Fish Market, which truck was being operated by Goldanski when it collided with an automobile being driven by defendant John Wilder. Brandis was a member of a certain synagogue in San Francisco, and Goldanski, who had immigrated to this country in 1949, attended the same synagogue but was not a member of it. The two men were friends.

The synagogue decided to give a picnic. Goldanski and Brandis intended to attend. A few days before the date fixed for the picnic the rabbi called a meeting to discuss plans for the affair. Goldanski volunteered the use of the partnership truck, a cash register, and his services in driving and in loading and unloading the truck. No remuneration was asked for, promised, or expected. Brandis was present at this meeting. The rabbi stated that others would also help with the loading and unloading.

There is considerable conflict in the evidence as to what happened between Brandis and Goldanski prior to their arrival at the synagogue where the food and equipment for the picnic were to be collected. Mrs. Brandis testified that her husband and Goldanski had agreed in advance that they would go together, and that Goldanski should pick up Brandis at 5:30 a. m. One of the sons of decedent corroborated the existence of such prior agreement, except that he testified

the agreed upon time was 7 a. m. Mrs. Brandis testified that on the morning of the picnic Goldanski did not arrive until 5:45 a. m., and that her husband had already left for the synagogue. Goldanski denied the existence of this prior arrangement to pick up Brandis, and denied that he endeavored to pick him up that morning.

The agreement among those who were to attend the picnic was that some were to donate food, and others were to donate services. Busses were to be available for all who desired that means of transportation. Some 25 or 30 persons were present at the synagogue to assist in loading the trucks. Goldanski's truck was loaded with food and equipment with his help, that of Brandis, and with the help of some seven or eight others. Goldanski, who cannot speak English, did not know the way to Bayshore Highway. He requested that one Levenson, who was present, or Brandis, should ride with him to point out the route. The truck would not comfortably accommodate three adults, so Brandis suggested that he would ride with Goldanski and that Levenson could travel on one of the busses. Brandis and Goldanski thereupon departed in the truck, with Goldanski driving. Undoubtedly it was impliedly understood that Brandis and others would help to unload the truck at the picnic grounds. It is admitted that Brandis did not agree to pay, nor did Goldanski expect to be paid, for the trip. Shortly after the truck arrived at the Bayshore Highway the truck and Wilder's automobile collided and Brandis was killed.

At the close of plaintiff's evidence a motion of nonsuit was first granted as to defendant Wilder on the ground that there was no evidence at all that he was negligent. Then the court granted a motion of nonsuit as to defendants Goldanski and Fourkas on the grounds that Brandis was a guest and not a passenger, and that the evidence, at most, showed but ordinary negligence on the part of Goldanski.

This appeal is from the judgment of nonsuit entered in favor of Goldanski and Fourkas. No contention is made that the evidence shows anything more than ordinary negligence, the sole contention being that it was a jury question as to whether Brandis was a guest or a passenger within the meaning of section 403 of the Vehicle Code. That section reads as follows: "No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of such vehicle or against

any other person legally liable for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver.''

This section has been a prolific source of litigation. The policy it embodies, its constitutionality having been established (*Krause* v. *Rarity*, 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327]; *Silver* v. *Silver*, 280 U.S. 117 [50 S.Ct. 57, 74 L.Ed. 221]), is a matter of legislative and not judicial concern. In the many cases decided under the section, certain principles have been established with reasonable clarity. ■ To constitute ''compensation'' within the section, actual money need not pass. If the rider confers a tangible benefit on the driver this will be sufficient to constitute ''compensation'' and hence make him a passenger and not a guest. (*McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909]; *Lerma* v. *Flores,* 16 Cal.App.2d 128 [60 P.2d 546].) But the tangible benefit thus conferred must not be the mere exchange of social courtesies. In the leading case of *McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909], the owner of a car and his wife agreed with the plaintiff and his wife to take their car on a pleasure trip, each family to pay one-half of the trip's expenses. It was held that, as a matter of law, the joint payment of expenses was not ''compensation,'' but was a mere exchange of social amenities. For that reason, plaintiff and his wife were guests. At page 286 the court laid down the applicable rule as follows: ''Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure.''

■ On the other hand, where the main purpose of the trip is business, there is no doubt that evidence of a benefit of the type here involved—guidance as to route and helping to load and unload—is sufficient to sustain a finding of compensation within the meaning of section 403 of the Vehicle Code so as to render the rider a passenger. Thus in *Yates* v. *J. H. Krumlinde & Co.,* 22 Cal.App.2d 387 [71 P.2d 298], it

was held that where the rider expressly or impliedly agreed to help unload a truck and to assist in guiding it through some gates, such was sufficient benefit to sustain a finding that the rider had given "compensation" and was therefore a passenger and not merely a guest. That case involved a business trip. In *Christiana* v. *Rattaro,* 81 Cal.App.2d 597 [184 P.2d 682], the plaintiff, a boy, was taken on a business trip by the driver to assist the driver in unloading melons. This was held sufficient to sustain a finding of payment of compensation within the meaning of section 403. *Lerma* v. *Flores,* 16 Cal.App.2d 128 [60 P.2d 546], was one where the rider went along to advise the driver as to route, and this was held sufficient benefit, the adequacy of which would not be examined, to sustain a finding of compensation within the meaning of the section. Again the purpose of the trip was business—the carriage for hire of plaintiff's goods from one town to another. In *Walker* v. *Adamson,* 9 Cal.2d 287 [70 P.2d 914], a companion case to the *McCann* v. *Hoffman* case, the splitting of expenses on a business joint venture was held to be compensation within the meaning of the statute. (See, also, *Fedler* v. *Hygelund,* 106 Cal.App.2d 480 [235 P.2d 247].)

But while the appellate courts have been extremely liberal in holding, as a matter of law, or in allowing the jury to find, that a benefit amounts to compensation where the purpose of the trip is business, they have, with certain exceptions hereafter noted, both before and after the decision of *McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909], strictly applied the rule that, where the purpose of a trip is pleasure, the mere exchange of social courtesies is not a benefit within the meaning of the statute. *Rogers* v. *Vreeland,* 16 Cal.App.2d 364 [60 P.2d 585], contains an elaborate discussion of the rationale of the rule embodied in the statute and holds that, as a matter of law, the mere sharing of expenses on a pleasure trip is not the giving of compensation. The court (p. 367) carefully differentiates between a business and a pleasure trip, pointing out that a benefit on a business trip is rendered to produce a profit to the driver, while such benefit on a pleasure trip is a social amenity. In *Stephen* v. *Spaulding,* 32 Cal.App.2d 326 [89 P.2d 683], a judgment in favor of the rider was reversed where the rider paid a share of the gasoline bill on the way to a bridge party. Such payment was held not to be compensation but, on a pleasure trip, a mere exchange of "social amenities." The same rule was

applied, as a matter of law, in *Fiske* v. *Wilkie,* 67 Cal.App.2d 440 [154 P.2d 725].

But appellant contends that these cases are no longer the law, and that recent cases have tended to apply the business trip rule to pleasure trips. The cases cited do not support that contention. ▮ All that they establish is that, even though the purpose of a trip is pleasure or social, the rider may be a passenger if the driver actually receives for the trip something intended as compensation. The first case so holding was *Whitechat* v. *Guyette,* 19 Cal.2d 428 [122 P.2d 47], where the receipt by the driver of $5.00 from the Y.M.I. to drive members to a meeting was sufficient to submit the question of compensation within the meaning of section 403 to a jury. The court expressly held that benefits of joint attendance at a social event or of companionship on the trip would not be sufficient, and that the mere splitting of expenses was not enough. The court placed considerable weight on the fact that a third person paid the $5.00—the Y.M.I.—and held that, even though the main purpose of the trip was social, it was a question of fact for the jury whether the $5.00 was accepted as compensation for the trip.

This case was followed by the case of *Whitmore* v. *French,* 37 Cal.2d 744 [235 P.2d 3], which is the case most strongly relied upon by appellants in the instant case in support of their contention that it was for the jury to decide whether the benefits here conferred were accepted as compensation. There, two plaintiffs, husband and wife, on a pleasure trip, paid one-half of the total trip expenses, including food, lodging and sight-seeing, and the two defendants paid the other one-half of such expenses, but the defendants also brought along their two sons, 12 and 14. The majority of the Supreme Court held that, as a matter of law, this payment of one-half of the expenses, constituting more than the plaintiffs' proportionate share, constituted a tangible benefit and thus was compensation within the meaning of section 403. The court stated the rule as follows (p. 746) : ''The designations 'passenger' and 'guest' have been adopted for the purpose of distinguishing a person who has given compensation within the meaning of section 403 of the Vehicle Code from one carried gratuitously. (*Kruzie* v. *Sanders,* 23 Cal.2d 237, 241 [143 P.2d 704].) A person who accepts a ride does not cease to be guest and become a passenger merely by extending customary courtesies of the road, such as paying bridge or ferry tolls (see Rest., Torts, § 490, comment a), and it

has been held that the sharing of expenses does not destroy the host and guest relationship if nothing more is involved than the exchange of social amenities and reciprocal hospitality. (*McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909].) Where, however, the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, the rider is a passenger and the driver is liable for ordinary negligence. [Citing cases.] This is, of course, true whether the trip is for the joint pleasure of the participants or is of a nonsocial nature.''

This case was followed by the appellate court in *Harris* v. *Harfmann,* 113 Cal.App.2d 615 [248 P.2d 501]. There a trip was taken by a mother and her two daughters. One of the daughters, the defendant, owned an automobile. The other daughter, the plaintiff, had two small children. The mother, the defendant, and the plaintiff and her children took an automobile trip to Oklahoma. The defendant agreed to furnish and to drive her automobile, and the plaintiff agreed to pay for all gasoline and oil. The purpose of the trip was to permit the mother to investigate some property of hers in Oklahoma and Colorado, and to permit plaintiff to see her son who was in Oklahoma. While driving in New Mexico the defendant was guilty of ordinary negligence, resulting in injuries to plaintiff. The trial court found that the plaintiff was a guest and not a passenger. The appellate court held that under the rule of *Whitmore* v. *French,* 37 Cal.2d 744 [235 P.2d 3], the case must be reversed. At page 686 the court stated:

''That case states the rule that where the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, the rider is a passenger and the driver is liable for ordinary negligence. And where one makes a substantial contribution toward the cost of the journey, as a matter of law he is a passenger and not a guest. . . .

''In the case at bar the agreement to pay for gas and oil used on the trip was such a substantial contribution as to make plaintiff a passenger, . . .''

It will be noted that in both the Whitmore and Harris cases, the court stated that the tangible benefit only had to be ''*a* motivating influence'' for taking the trip, but in *Clifford* v. *Ruocco,* 39 Cal.2d 327 [246 P.2d 651], in a footnote on page 328, the author of the Whitmore case states that the tangible benefit must be ''*the* motivating influence.''

Under these cases there can be no doubt that the courts have now applied the tangible benefit rule to social journeys. Under these cases, "compensation" can be found if there is an intent to receive compensation or if there is the conferring of an actual tangible substantial benefit on the driver where the benefit conferred is at least "a" motivating influence for taking the trip. But the Whitmore case expressly excluded "extending customary courtesies of the road" from the category of tangible benefits, and reaffirmed the "exchange of social amenities" rule stated in *McCann* v. *Hoffman*, *supra*. In the instant case the parties were attending a church picnic. The driver, instead of furnishing food was furnishing services—the use of his truck. Brandis rode with him to get to the picnic and to show the driver the route. That was a mere incidental courtesy, the granting of a social amenity, and was not the conferring of a tangible, substantial benefit that was a motivating influence for the taking of the trip. Therefore, Brandis was a guest and was not a passenger. The trial court correctly so held.

The order and judgment appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 21, 1953. Carter, J., was of the opinion that the petition should be granted.