237 Cal.App.2d 444 (1965)
46 Cal. Rptr. 898
ELIZABETH NEUSER, Plaintiff and Appellant,
v.
ARTHUR H. BRITTO, Defendant and Respondent.
Docket No. 22016.
Court of Appeals of California, First District, Division One.
October 13, 1965.
*445 Albert E. Levy for Plaintiff and Appellant.
Bronson, Bronson & McKinnon and Grant P. Du Bois, Jr., for Defendant and Respondent.
SIMS, J.
Appellant, the plaintiff below, has appealed from a judgment entered in favor of respondent upon the granting of the latter's motion for a nonsuit in an action in which she sought to recover damages for personal injuries received as a result of a collision allegedly caused by his negligence while she was riding in a vehicle operated by him.
No claim is made that respondent was intoxicated or that he engaged in wilful misconduct. The sole issue is whether the evidence reflects that at the time of the accident appellant was as a matter of law a guest in respondent's vehicle; or, as it may be stated conversely, is there any evidence which would support a finding that she was other than a "person who as a guest accepts a ride ... without giving compensation for such ride." (Veh. Code, § 17158.)
Appellant, who had previously been in California, returned to San Francisco in August or September 1961, and enrolled at and attended San Francisco State College. She first met respondent in September 1961 at the home of Frank Collasto, a fellow employee of respondent, with whom respondent subsequently took up residence. Thereafter she saw him on three or four occasions before October 11, 1961, the date on which the accident occurred. She generally saw him at the Collasto premises, where she had eaten some meals, and had been out with him and others driving around in his car.
At some time during the day in which the accident occurred, appellant received an invitation for herself and her roommate to come over to the Collasto premises for dinner. She arrived at the apartment about 5:30 p.m. and found respondent and Collasto there. Her roommate arrived about 15 minutes later. Appellant remained at the apartment eating dinner and doing *446 the dishes until about 8 p.m. when she departed with respondent in his car on the trip which resulted in the accident.
According to appellant's testimony during the course of the evening, shortly after her arrival and before dinner, respondent "told me that ... [Bud Carson] was going to move into the apartment, and that he had to help him, you know. He said he would, and he asked me if I would help and I said yes, I would.... He said a bed and the other fellow's clothes and a few other articles [were going to be moved]." The trip had not been mentioned in the original invitation or prior to appellant's arrival for dinner. No plans were suggested at that time other than just going over and picking up the belongings and then coming back. Appellant had not met Carson before, had never been to his apartment, had never seen the belongings to be moved, and did not know how much there was. Respondent told her and she understood all along that Carson was waiting at his place and could help move the belongings.
She did not know whether her services would be needed to load and unload the car because she had not seen the belongings, but she figured her assistance would be needed because respondent had asked her. In her words, "I thought I was going to help." She denied she was just along for the ride and companionship and stated, "Some people move and you usually help them.... It is quicker that way." She affirmed the following statement of respondent's counsel, "Well, to sum up, it is your testimony that you went over there to help him move primarily...."
Respondent testified that on the evening in question, after dinner when he was ready to leave the house, he had a conversation with appellant. The record reflects: "Q. Well, you had a conversation with Miss Neuser where you asked her to accompany you and help with the moving, is that true? A. That is when I was leaving the house then. Q. All right. And you were ready to leave. Then did you turn to Miss Neuser? A. Yes. Q.... Did you turn to her and ask her to please come along and help you move Mr. Carson? A. I did, to that effect. I did, to that effect. Q. Do you recall having made that statement? A. Yes. THE COURT: Just what did you say to her? THE WITNESS: Well, I can't remember exactly what I [did] say, but I did ask her to go down, because I was going down to help Mr. Carson to move, and I asked her if she would come down and help." He stated that there was no discussion about what was going to be moved, that he could *447 recall no conversation about a bed or other than the request to come and help with the move, and that he could not recall what appellant replied to his request.
In response to inquiries about his intention to have appellant help in the move if needed, respondent reiterated that he did not know and could not recall the exact words he used; and stated that he supposed he expected her to help if she came along, and, "I don't know what the true intention was, you see." He further testified that it was true that the words he used were that he wanted her to help move Carson; that he did not tell her he did not intend her to help; and that he would have gone by himself if she had not accompanied him.
Further evidence reflects that respondent and Collasto were sharing expenses and that it was anticipated that Carson on moving in would contribute his share. There is nothing to show that this information was communicated to appellant.
[1] Generally it is for the trier of fact to determine whether or not a person riding in another car is a "guest," and the question, inherent in that inquiry, whether or not compensation was given for the ride. (Martinez v. Southern Pac. Co. (1955) 45 Cal.2d 244, 250 [288 P.2d 868]; Stephan v. Proctor (1965) 235 Cal. App.2d 228, 232 [45 Cal. Rptr. 124]; Nault v. Smith (1961) 194 Cal. App.2d 257, 266 [14 Cal. Rptr. 889]; Clapp v. Hester (1959) 169 Cal. App.2d 558, 560 [337 P.2d 525]; Shapiro v. Bookspan (1957) 155 Cal. App.2d 353, 358 [318 P.2d 123]; Gosselin v. Hawkins (1950) 95 Cal. App.2d 857, 861 [214 P.2d 110].) [2] On the other hand, if the admitted facts give rise to but one reasonable conclusion the question of whether or not compensation was given for the ride and the resulting status of the rider is one of law. (Whitmore v. French (1951) 37 Cal.2d 744, 746-747 [235 P.2d 3]; Clapp v. Hester, supra, 169 Cal. App.2d 558, 560; Ray v. Hanisch (1957) 147 Cal. App.2d 742, 750 [306 P.2d 30].)
[3] Where the evidence reflects that the rider was a "guest" as a matter of law, it is proper to grant a nonsuit in the absence of proof of intoxication or wilful misconduct. (McCann v. Hoffman (1937) 9 Cal.2d 279, 285-287 [70 P.2d 909]; Stephan v. Proctor, supra, 235 Cal. App.2d 228, 231-232; Nault v. Smith, supra, 194 Cal. App.2d 257, 261-264; Brandis v. Goldanski (1953) 117 Cal. App.2d 42, 44-49 [255 P.2d 36]; see also Ray v. Hanisch, supra, 147 Cal. App.2d 742, 748-750; Lyon v. City of Long Beach (1949) 92 Cal. App.2d 472, 474-479 [207 P.2d 73]; Bummer v. Liberty Laundry Co. *448 (1941) 48 Cal. App.2d 648, 649-650 [120 P.2d 672]; Stephen v. Spaulding (1939) 32 Cal. App.2d 326, 328-329 [89 P.2d 683]; and Rogers v. Vreeland (1936) 16 Cal. App.2d 364, 365-370 [60 P.2d 585].) [4] Conversely it is error to grant a nonsuit if there is evidence sufficient to sustain a finding that the rider was other than a "guest." (Thompson v. Lacey (1954) 42 Cal.2d 443 [267 P.2d 1]; Kruzie v. Sanders (1943) 23 Cal.2d 237, 241-243 [143 P.2d 704]; Schramko v. Saulter (1956) 146 Cal. App.2d 549, 551-552 [303 P.2d 1061]; Carey v. City of Oakland (1941) 44 Cal. App.2d 503, 507-510 [112 P.2d 714]; Darling v. Dreamland Bedding & Upholstering Co. (1941) 44 Cal. App.2d 253, 255-258 [112 P.2d 338]; and see Druzanich v. Criley (1942) 19 Cal.2d 439, 443-444 [122 P.2d 53].)
Appellant urges that the evidence demonstrates that she was a "passenger" or rider giving compensation as a matter of law. (See Tucker v. Landucci (1962) 57 Cal.2d 762, 766 [22 Cal. Rptr. 10, 371 P.2d 754]; Gillespie v. Rawlings (1957) 49 Cal.2d 359, 366 and 369 [317 P.2d 601]; Whitmore v. French, supra, 37 Cal.2d 744, 746-747; Druzanich v. Criley, supra, 19 Cal.2d 439, 443-444; Clapp v. Hester, supra, 169 Cal. App.2d 558, 562.) She in effect urges that the trip was one involving the business of respondent, that is, to secure a further roommate who would contribute to the expenses of the apartment which he then shared with Collasto; and that the assistance he was to receive from the appellant was a substantial motivating influence for furnishing her the ride. This analysis overlooks the possible inference that the services were to be rendered to Carson, not respondent driver. The fact that the latter might benefit economically was not discussed or made a consideration for the request that appellant go on the trip or her assent thereto. (See Nault v. Smith, supra, 194 Cal. App.2d 257, 265-266.) It further appears that respondent admitted he would have made the trip on his own in any event. It would be cavalier and presumptious to hold as a matter of law that under the circumstances of this case the driver was motivated by the hope of benefiting from the brawn of his companion of the fair sex rather than from the pleasure of her company. (See Comment, 2 BAJI, pp. 677-678.) In fact if, as may properly be inferred from the evidence, both parties were interested in the single objective of assisting Carson, that fact alone would not control appellant's status and make her other than a guest. (Druzanich v. Criley, supra, 19 Cal.2d 439, 442-443; Whitechat v. Guyette (1942) *449 19 Cal.2d 428, 433 [122 P.2d 47]; Bowman v. Collins (1960) 181 Cal. App.2d 807, 813-815 [5 Cal. Rptr. 776]; Benjamin v. Rutherford (1956) 146 Cal. App.2d 561, 565 [303 P.2d 1079]; Baker v. Novak (1956) 144 Cal. App.2d 514, 518 [301 P.2d 257]; Yates v. J.H. Krumlinde & Co. (1937) 22 Cal. App.2d 387, 390 [71 P.2d 298].) The foregoing authorities establish that it would be erroneous to determine that a rider is not a guest as a matter of law where the evidence is susceptible of conflicting inferences. (See also Lundell v. Hackbarth (1964) 226 Cal. App.2d 609, 611-613 [38 Cal. Rptr. 137]; Nault v. Smith, supra, 194 Cal. App.2d 257, 264-266; Hayes v. Harry (1960) 183 Cal. App.2d 412, 415-416 [6 Cal. Rptr. 671]; Shelby v. Hagood (1960) 182 Cal. App.2d 760, 764-765 [6 Cal. Rptr. 422]; Shapiro v. Bookspan, supra, 155 Cal. App.2d 353, 359.)
Although appellant must fail in her contention that she is a passenger as a matter of law, she is on firmer ground in insisting that the trial court erred in refusing to submit the question of her status to the jury. An examination of the facts in those cases in which a nonsuit has been upheld reflects no circumstances compelling a similar conclusion on the facts presented here. The situation approaches that of Brandis v. Goldanski, supra, 117 Cal. App.2d 42. Therein the facts reflect that the deceased husband and father of appellants, who was killed on a trip in an accident contributed to by the negligence of the driver, had assisted in loading a truck for a church picnic; that he had accompanied the driver to show him the way; and that it was impliedly understood that he would assist in unloading it. Mr. Justice Peters, then Presiding Justice of this court, noted that the rider rode with the driver to get to the picnic and to show him the route. He concluded: "That was a mere incidental courtesy, the granting of a social amenity, and was not the conferring of a tangible, substantial benefit that was a motivating influence for the taking of the trip. Therefore, Brandis was a guest and was not a passenger. The trial court correctly so held." (P. 49.) The opinion, in upholding a judgment of nonsuit, distinguishes between cases where the main purpose of the trip is business, in which "the appellate courts have been extremely liberal in holding, as a matter of law, or in allowing the jury to find, that a benefit amounts to compensation" (p. 46); and cases where the purpose of a trip is pleasure or social, in which event "the courts have now applied the *450 tangible benefit rule.... Under these cases, `compensation' can be found if there is an intent to receive compensation or if there is the conferring of an actual tangible substantial benefit on the driver where the benefit conferred is at least `a' motivating influence for taking the trip. But the Whitmore case [37 Cal.2d 744] expressly excluded `extending customary courtesies of the road' from the category of tangible benefits, and reaffirmed the `exchange of social amenities' rule stated in McCann v. Hoffman, supra [9 Cal.2d 279]." (P. 49.)
The two classes of cases are noted in oft-quoted principles set forth in McCann v. Hoffman: "[W]here a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants." (9 Cal.2d at p. 286; and see Gillespie v. Rawlings, supra, 49 Cal.2d 359, 364; Martinez v. Southern Pac. Co., supra, 45 Cal.2d 244, 250; Thompson v. Lacey, supra, 42 Cal.2d 443, 447; Whitmore v. French, supra, 37 Cal.2d 744, 746; Malloy v. Fong (1951) 37 Cal.2d 356, 376-378 [232 P.2d 241]; Kruzie v. Sanders, supra, 23 Cal.2d 237, 242; Druzanich v. Criley, supra, 19 Cal.2d 439, 443; Whitechat v. Guyette, supra, 19 Cal.2d 428, 433-435; Nault v. Smith, supra, 194 Cal. App.2d 257, 262-265; Clapp v. Hester, supra, 169 Cal. App.2d 558, 559.) "On the other hand ... where the relationship between the parties is one of business and the transportation is supplied in the pursuit thereof for their mutual benefit, compensation has been given and the plaintiff is a passenger and not a guest." (Id., and see Tucker v. Landucci (1962) 57 Cal.2d 762, 766 [22 Cal. Rptr. 10, 371 P.2d 754]; Gillespie v. Rawlings, supra, 49 Cal.2d 359, 366; Martinez v. Southern Pac. Co., supra, 45 Cal.2d 244, 251; Thompson v. Lacey, supra, 42 Cal.2d 443, 447; Whitechat v. Guyette, supra, 19 Cal.2d 428, 433; Walker v. Adamson (1937) 9 Cal.2d 287, 289 [70 P.2d 914].)
[5] In this case, as in Brandis, for reasons which have been noted above, the evidence fails to reflect that the main purpose of the trip was business, and the mutual business rule is inapplicable. The analogy of helping the church picnic or helping a friend, be it the driver or the new roommate, to move is appealing and should be followed.
Herein, however, unlike Brandis, the evidence, although admitting the inference, does not compel the conclusion that both parties had a common interest in the benevolent objective *451 of the trip as was the situation in that case. If it had not been for the request of defendant, plaintiff would not have exposed herself to the risks of the road which in fact occasioned her injuries. The issue, however, is not his invitation and her acceptance, but whether the circumstances show that a special tangible benefit to the respondent was a motivating influence for extending the request to and in fact taking appellant on the trip. In its most recent review of this question the Supreme Court of this state observed: "Some cases say that where the driver receives a tangible benefit which is a motivating influence for furnishing the transportation, the rider is a passenger. [Citations.] The cases which use the phrase `a motivating influence' and those which use the phrase `the motivating influence' do not, because of this difference in phraseology, state different principles. The thought conveyed by both groups of cases is that the tangible benefit, not mere pleasure, kindness, or friendship alone, must be the principal inducement for the ride to constitute compensation." (Gillespie v. Rawlings, supra, 49 Cal.2d 359, 364.)
That pleasure, kindness or friendship alone may well have been the principal inducement for the ride has been already noted in connection with the rejection of the view that the evidence compels a finding that appellant was a passenger as a matter of law. Conversely, albeit not so persuasively, the evidence also appears susceptible of the interpretation that the tangible benefit to be received from appellant in manual assistance in moving Carson's belongings was an inducement for the ride. In Kruzie v. Sanders, supra, the opinion recites: "Although section 403 of the Vehicle Code defines a guest as a person who accepts a ride `without giving compensation for such ride,' it is not necessary, in order to avoid the prohibition of the statute, for plaintiff to establish that the compensation received by the driver was given `for such ride' in the sense that plaintiff obtained or purchased transportation for some independent purpose of her own. Where the trip was not primarily for a social purpose, it is sufficient to show that defendant was to derive a substantial benefit from the transportation of plaintiff, and the fact that plaintiff received no benefit therefrom is immaterial. Guest statutes must be interpreted in accordance with the intention of the Legislature. A primary policy underlying these statutes is to prevent recovery for ordinary negligence by a guest in an automobile who has accepted the hospitality of the owner or driver. [Citations.] The statute was not designed to bar recovery *452 where, as here, the driver, rather than the person transported, benefited from the trip. It was not intended to prevent recovery for the negligence of a driver, such as the defendant herein, who requested a favor of plaintiff and furnished the ride merely as a means of obtaining that favor. [Citations.]" (23 Cal.2d 237, 242.) That such a favor, rendered at the request of and for the convenience or accommodation of the driver, may, as distinguished from must, constitute compensation for the ride has been established by numerous cases. (See Sadberry v. Griffiths (1961) 191 Cal. App.2d 610, 616-617 [12 Cal. Rptr. 773]; Roberts v. Craig (1954) 124 Cal. App.2d 202, 211 [268 P.2d 500, 43 A.L.R.2d 1146]; Fedler v. Hygelund (1951) 106 Cal. App.2d 480, 484 [235 P.2d 247]; Christiana v. Rattaro (1947) 81 Cal. App.2d 597, 598-599 [184 P.2d 682]; Fachadio v. Krovitz (1944) 62 Cal. App.2d 362, 363-364 [144 P.2d 646]; Weddle v. Loges (1942) 52 Cal. App.2d 115, 125 [125 P.2d 914]; Carey v. City of Oakland, supra, 44 Cal. App.2d 503, 509; Duclos v. Tashjian (1939) 32 Cal. App.2d 444, 450 [90 P.2d 140]; Yates v. J.H. Krumlinde & Co., supra, 22 Cal. App.2d 387, 390; Lerma v. Flores (1936) 16 Cal. App.2d 128, 130-131 [60 P.2d 546]; Haney v. Takakura (1934) 2 Cal. App.2d 1, 3-9 [37 P.2d 170, 38 P.2d 160].)
The trial court erred in determining appellant's status as a matter of law and in withdrawing that question from the consideration of the jury.
The judgment is reversed.
Sullivan, P.J., and Molinari, J., concurred.